3291, Peoples Gas System v. Posen Construction. Complete issue of first impression. Mr. Cohen, you're up. Thank you, Your Honor. May it please the Court, my name is Steve Cohen. I represent Peoples Gas System, which is a division of Tampa Electric Company, and this is a case of first impression and it is a pure issue of statutory interpretation. And the issue is whether Florida Statute Section 556.106 permits a cause of action by a utility operator like Peoples Gas against an excavator for losses it sustained to compensate a third party who was injured during an excavation accident, and where the excavator violated the statute and caused the accident. 556.106 is the liability section of Florida's Underground Facility Damage Prevention Safety Act. The act governs excavation activity in the state of Florida, and it was specifically enacted to protect underground lines, so gas mains, electric conduit, water, all the sewage, those kinds of things, from excavators who are digging into the ground. And it prescribes the rights and the obligations of utilities, the member operators, the excavators, and the system. It's called the Sunshine One System. Let me ask you this. In your brief, you asked us to certify two questions to the Florida Supreme Court, and I'm a great believer that we shouldn't be deciding questions of first impression that involve the state's substantive laws. But on the other hand, we don't like to overwork our brothers and sisters who serve on the state Supreme Courts in all three states over which we have jurisdiction. We do have a standard for that. Tell us why in this case we meet the standard for certification and why we should just certify. Because, Your Honor, I believe that we ... Speak a little louder. Sure. We believe that there is substantial doubt with respect to this particular statute, and it is an important statute in the state of Florida. There's excavation activity going on all over our state every single day, and it impacts facilities that are under the ground. And like in this case, people get hurt, expenses are incurred, litigation. It's a very, very important public statute. This and ... In my state of Alabama, district courts have the authority to certify. In Florida, district courts do not have the authority to certify. Is that correct or not? I do not know the answer to that, Your Honor. Did district courts of appeal or federal district courts? No, federal district courts. The answer is no. The answer is no. The Florida Supreme Court will only take them from this And we did not ask the district court to certify it. Any questions? We filed our complaint and it was dismissed with prejudice, so we never got that opportunity, even if it existed. Going to the same issue that Judge Dubina asked you about from a different perspective, another question in my mind always in deciding whether to certify or not, even if the standard is generally met, is whether or not the issue is one that is recurring, one that the courts are faced with all the time. It seems sort of odd that in all the years that this law has been in place, that this issue hasn't arisen, or at least not led to an opinion explaining whether or not there is the sort of claim that People's Gas wants to assert. Does that factor into the whole certification decision in your mind or not? I think that it does. I think that the reason is because if you look at the statute, it's 556-106. Part two deals with liability of excavators. There's a 2A, a 2B, and a 2C. 2A and 2B are distinct claims. And then there's a 556-106-3, which is the liability of the excavator. I'm sorry, the liability of the member operator to the excavator. 556-106-2A, there is at least one case that has addressed that, and that's the Hinson case, which was a Middle District of Florida case. And then there is, there are two DCA opinions that have addressed 106-3. No court has addressed 106-2B, which we contend is a claim for indemnity under the statute. And no courts have discussed the interplay of those statutes. And they're very different. Can we just launch into it and see if the Florida courts will agree or disagree with us? Because if it's not coming up, why send it to the Florida Supreme Court? Well, unquestionably, you all can obviously launch into it and explain it. But it has statewide policy implications. Again, the purpose of the statute is to prevent excavation accidents. That's the first purpose. The second purpose of the statute is to enforce the first purpose by kind of the stick. And it says basically that excavators who are in the best position to prevent excavation accidents is they don't have to dig or they can wait. And the intent of the statute is to make the excavator 100 percent responsible, 100 percent at fault where the excavator violates the act. And that is crystal clear. Your position is that the district courts focused too much on the language in Subsection B which talks about how costs are normally computed and didn't focus enough on the anterior language. Yes. And the provision. How is indemnity solved in these cases if it's not for the statute? Is there still a common law indemnity claim? Maybe that's why these Subsection B claims are not being asserted, that anybody who is in your client's position simply pursues a common law indemnity claim under Florida law and that's the way it gets solved? I'm not sure if we could pursue a common law indemnity claim here for a lot of the reasons opposing states in their brief. We did not assert common law. No, I know you didn't. I'm just trying to think of why this Subsection B scenario hasn't played out in the past or at least in a case that we know of. A lot of it could simply be that a lot of these cases resolve themselves because they either are cases between companies who are seeking indemnification or damages from one another for actually the hits on the line, the delay costs and those kinds of things. And then the damages case would arise or can be very big typically. So the gentleman in this case, Mr. Santos, was severely burned. Over 50% of his body preferred to be burned. I think a lot of the cases never get to Florida's job. So do you think the parties in these types of cases are working things out after incidents with a particular understanding of what the statutory structure means? Is that what you're letting us know? I can't say that they understand what the statutory structure means. I'm sure people do. I think that a lot of these cases do resolve themselves. And that's why there may not be any reported decision. Or this 2B has simply never been, to my knowledge, it has just never been construed by any court. We could not find a case. But if you look at 2B, and if you read it and you compare it, one example we use in our briefs was the Martinez case. The statute is written a lot like Martinez. The statute does not say indemnity, but it does make an excavator liable where the excavator violates statute. The excavator liable for losses to all parties. And that is similar to the language in Martinez and similar to the out-of-state cases that we cited the court to. In particular, the Gunnell case, which is the Arizona Underground Facility Damage Prevention and Safety Act, well, their act. And if you look at that statute, it's very similar. It says third parties. The Florida statute says you're liable to all parties. We would suggest the Florida statute is even broader and the Arizona Act has been construed, doesn't say indemnity, it's been construed as an indemnity statute. The High Voltage Act there doesn't say indemnity. It's been construed as an indemnity statute. As a matter of, this is one of those cases I think where a court can legitimately look at policy because the language is not, at least to me, self-evident. Why does a decision in your favor further the policy perspective that's envisioned by this act? We cited the court to a case called Tucson Electric. And it is an Arizona case. And it's a High Voltage Act case. But it's a very similar intent. It holds contractors responsible for damage to high voltage lines versus that statute or the court in that case explained, I think, the intent as well as anyone could, which is it represents a determination by the legislature that where work is being performed near power lines, the person or entity performing the work is in the best position to prevent injury, whether caused by its negligence or that of the utility, by giving notice so that appropriate protective measures can be taken. And in that court, and this is one of the reasons why common law indemnity wouldn't fit. In Florida, for common law indemnity, the indemnity has to be 100% not at fault. In other words, the person you're seeking indemnity from has to be totally at fault. So I couldn't seek indemnity if I bore any fault. What the Tucson case says, and what these other cases say, what the statute actually does say is that an excavator is liable even if the member operator also violates the statute. That is, if the excavator violates the statute, they buy 100% of the responsibility. And where it says that is in Part 3 where the statute says that a member operator can be liable to the excavator, where the excavator gives proper notice, and where the excavator otherwise complies with the statute. And what Part 3 also says is it's only in that situation, only where the excavator gives notice and complies with the statute, that they are not liable. So it makes an affirmative statement. This excavator is when you will not be liable. So this statute, in essence, I hadn't thought of it this way, but the way you've described the statutory scheme, it eliminates any contributory negligence on your client's part? Yes. That's true. Isn't that a little bit of a problem for you policy-wise? That if your client was 95% negligent and the excavator was 5% negligent now, you're going to hold the excavator liable for 100% of the sums that you paid to a third party? That is the legislative determination. And in this case, had we received proper notice, and we pled we didn't, and we truly believe that, had the excavator waited for us to mark our line, this accident doesn't happen. It is fair, and it does make sense. Because the excavator is the only person at the end of the day who can make that decision, that business decision.  Is the utility around an 8-inch high-pressure gas main that I know is out there, I just can't see a yellow flag telling me exactly where it is? Am I going to put people in danger, or am I going to step back and wait a day for the utility to come out and do its job? So I think that the excavator makes a business decision there. And this decision causes a lot of problems. If my colleagues don't mind, since we're out of time, I have a question about the statute. So, person is defined in 556.102.9. How is person different than excavator? Is it a broader set of entities? I think a person can be a much broader set, because a person is individual, entity, corporation. An excavator is someone who actually performs excavation activity. So I think that an excavator is a person, but by virtue of that person performing excavation activity, under the statute, they would become an excavator. Anyone in Florida who is digging is an excavator. If your owner was digging in your yard, fixing your sprinkler system, you're required to call 811 and get the utilities to come out and mark before you dig. An excavator is the person who is actually doing the digging. And person is what I would call the typical definition of person, individuals, entities, etc. Parties is not defined in the statute. At least we couldn't find a definition. There are some terms that are used here and this is, I think, where the Henson Court does a good job of pointing out that there's a lot of different words and it's hard to figure out what they all mean. And I think that the trial court in this case said pretty much the same thing. There's a lot of words and they all The statute is not a model of clarity, probably, is a good way to say it. That sounds right to me because it looks like in 2A also 2A addresses the violation by a person of 556.105.1 or 6, whereas 2B addresses the failure to discharge a duty. And I would think that the any duty, the general term duty has to be broader than just those two subsections. Is that right? I would think so. I think that's the case. 2A is a different First of all, the only people who can bring a claim under 2A is a member operator. And it would be for violations of two very specific provisions of the Act. The notice provision is 105.1 and then 6 is the one that says, if you're going to dig, be careful. And it has some requirements. And there has to be a line hit. So there has to be damage to the actual underground utility for the member operator to bring a claim under this statute against the excavator, the person doing the excavation work. B is much broader. And it simply says, if an excavator fails to discharge a duty, the excavator, if found liable, is liable for the total sum of the losses to all parties involved. And it's liable for the total sum of the losses to the parties. And, again, that language, I know this says is liable for but the Martinez statute says is responsible for I don't know if there's a difference between responsible and liable in creating the indemnity obligation that we think exists. All right, Mr. Coyne. Thank you very much. You've saved your time for rebuttal. Thank you. Good morning. Hinda Cline here on behalf of POSEN. The court asked a question about whether or not comparative fault comes into play with respect to this statute. And if the court reads the Hinson case and also looks at the pleadings in the other cases arising from the same accident, you will see that in fact comparative fault is very much at play. In this case, actually not in this case, but the original case brought by Mr. Santos sued a number of entities, among them PGS and POSEN all for negligence. PGS thereafter sued POSEN alleging negligence and negligence per se and citing 556 as the standard of care. And that is what I believe this statute represents. It represents a standard of care. If you read the Hinson case, which is a trial court middle district case, it does an excellent job of really digging into this statute and talking about and concluding ultimately that the statute provides no greater rights or remedies than the common law, no matter how you read it. In that case Bell South had argued that because of the use of the phrase all damages, all losses, somehow it was entitled to recover from the electrical contractors, anything and everything it suffered as a result of the incident that gave rise to the case. And the court went through not only the statute word for word, but also the legislative history and noted, as we did in our brief, that really the crux of this statute is to provide very specific procedures to prevent damage. And it is not meant for the purpose of creating a cause of action, which is what Whoever it may be, 2B creates some right to something. Does it not? It's more than a standard of care. It does talk about that if an excavator is found liable for a violation of the statute, it's liable for the total sum of the losses to all parties involved. We contend that that does not create an indemnification right. Who does it make your client liable to in the right scenario? When is that subsection triggered for liability on behalf of your client if your client violates a duty? I would think that this statute talks in terms of, well, it says all parties involved, and as opposing counsel correctly noted, we don't really know who parties is, but it seems in the context to really refer to maybe the member operators, well, sorry, they're talking about owners of underground facilities, and all of the other people. The statute talks in terms of the liability, the member operator, excavator, and system. It goes down section by section talking about the liability of each one of them. At no point does this particular section of the statute 106 talk in terms of personal injury liability in those cases brought by individuals or third parties who might have been injured here. Even though the last, well, one of the last sentences of B limits the damages that can be paid for loss of revenue and loss of use, if that's the case, doesn't that suggest that there are other losses and damages that are recoverable under B as well? Oh, yes, absolutely. Who can you be liable to? If a person is walking on the street, let's say you have a machine not manned by a person doing excavation. That excavation hits something, and a passerby on the street is hurt. Could that passerby sue your company, your client under subsection B for damages as opposed to just filing a negligence action? I've never seen anyone do it. I know. I'm asking you whether it can be done. I don't think so. I don't know what this means. Yeah, I don't read this statute as giving rise to a separate and distinct cause of action for a violation of this statute. What does it do then? What does B do if it doesn't give you a limited cause of action for something? It talks about the liability of an excavator to parties, which is undefined, but who I believe would be member operators, owners of an underground facility, and the system, which is talked about in 5B. So no third-party claims can be brought under B in your view? No, I don't think so, because if you compare the language of the statute to the language of a number of other statutes that we both have cited with similar language and similar intent, you will see specifically under, actually the Idaho statute, which is discussed in the briefs, does talk about damages to the facilities and all costs and expenses, including damages to third persons incurred by the public utility as a result of that contact. This language has been deemed to be language authorizing a claim for indemnity. Colorado, Wyoming, Tennessee, and the Virgin Islands all specifically provide in their statutes for indemnification. Well, I think that Hinson really shows why there truly isn't quote-unquote substantial doubt. While it is absolutely true that this statute has not been construed by the Florida State Courts in any great manner, it's also true that, as in Hinson, if one looks at the state law regarding statutory construction, one can easily construe by virtue of the language used and the purpose behind the statute as specified in the statute itself, which is damage prevention, and also the legislative history of the statute, one can reach a rational interpretation of the statute which meets its legislative goals, which is damage prevention. Not every case of first impression warrants certification to the Florida Supreme Court. As the Court has mentioned, this statute's been around since 1993, and ... ... No, I don't think so. I think different courts ... ... No. The few cases on it deal with different portions of the statutes that are not really at issue here. There's not a single case out there that anyone's been able to find on subsection D. That is correct. That is absolutely correct. But I think that the Hinson case, although it doesn't directly address subsection B, does talk in terms of the legislative intent, the way the statute is structured to talk about the relative liabilities of a member operator, the system, the board members, et cetera, as ultimately providing for standards of care, but not creating a separate and distinct cause of action predicated on the violation of the statute, and not basically trumping the common law, not adding anything to the common law. And if there is any change to the common law, it would be in that specific portion of the statute that talks about a cap on liability for very specific economic damages. But every case that I've seen that deals with this statute and actually cases in other states dealing with similar statutes, they were all planned in terms of negligence or negligence per se. And that was exactly the case here when PGS sued Pozen for its economic damages, which it did in 2012, arising from this, they pled it in negligence and negligence per se. When Santos sued PGS and Pozen, he pled it in negligence and negligence per se. Pozen was dropped from that suit. That was the 2013 suit? Yes. I wonder why PGS didn't file a third-party complaint against them. I don't have any personal knowledge. Why not a third-party complaint? I was a little confused by that myself. They certainly could have. And, just as an aside, as I said, there was a cause of action brought in 2012 by PGS against Pozen for economic damages authorized under the statute. The cause of action was for negligence and negligence per se. And Pozen counterclaimed against PGS. And interesting, just as an aside, was that PGS, in that lawsuit, actually sought compensation in the form of attorney's fees that it incurred in litigating the Santos case. So, actually, my thought was, why wasn't that case paired with this case? Why was there a cause of action for economic damages and then a separate cause of action for alleged indemnity? One way or the other, it certainly could have been litigated all at one time. But what's interesting to note is that in the underlying personal injury claim, Santos alleged that a number of different parties were comparatively at fault. And nobody at that point raised the argument or the affirmative defense that under the statute, there is no such thing as comparative fault. Do you think there is? I believe that there is. Absolutely I believe that there is. If a member entity sues you for having hit a line and caused it loss of use or loss of revenue, do you think there is comparative negligence? I do. Where do you get that from in terms of the statutory language? Well, in terms of the statutory language, if you look at the subsection, what was it? Subsection 1, I'm sorry, I can't get that. 2A talks in terms of the excavator's liability being rebuttably presumed that a person was negligent. And then says the person if found liable is liable for the total sums to all member operators. But then subsection 3 talks in terms of a member operator who has failed to discharge a duty under the act and says that if the excavator is found to be not at all at fault, then the member operator is liable for all of the damages. Nothing in this talks in terms of comparative fault, but I would suggest that that silence means nothing insofar as trumping the common law. What it does provide is where one party is totally at fault, that party eats all of the damages. I think that's all that this means. I don't think that you cannot, that a third party cannot compare the fault of two liable parties under the statute and say you violated these duties, you violated the standard of care, you had separate duties, you had a separate standard of care, together you caused my accident. That's precisely what Mr. Santos alleged in his complaint against both of us. You suggest in one sense that we can't add indemnity language through a judicial construction of the statute to allow this sort of a claim against posing, but by the same token, can we add language which suggests that there's contributory negligence or comparative fault implicit in the language of the statute too? When it uses the words total sum of the losses? I don't think that this court has to actually add any language to anything. This is a common law negligence claim. No, that's not what they're making it. They're proceeding under the statute because, as your colleague suggested, there may be an argument that his client was negligent to some degree, and if that is ultimately proven, then they can't prevail under Florida common law indemnity standards. But if he's right about the way this statute works, if you're on the hook, you're on the hook for the whole thing, despite the fact that they may have been partly negligent. That gives rise to the question of what is the whole thing? Even if you look at the statute and interpret it the way they want you to, where is there anything in this statute that provides for indemnification of the monies they paid to an individual, Mr. Santos, who sued them for the direct negligence for the violation of their duties under the statute? That would make no sense. It would have no legislative purpose. As the Henson court noted, the whole purpose of the statute is not about recompense. It's about damage prevention. It's about making it clear as to which parties have certain obligations and duties, what those obligations and duties are to one another, and a limitation on certain very specific economic damages that they may owe to other member operators or owners as a result of their negligence. Ms. Klein, we've taken you way over your time, and we thank you for the help. Mr. Cohen, you've got a little bit of rebuttal time left. Thank you very much. Thank you. May I start by just clarifying something about what the Santos suit, the 26th or Fifth Amendment complaint, whatever it was, against PGS was about. There were two claims, and it's in the record. It's in the various requests for judicial notice that the trial court did not consider. The Santos lawsuit was a claim for negligence. That's count one. Count two is a claim for negligence per se under the act, and it is based on PGS's alleged failure to respond to the Pozen Sunshine I notice that we contend was invalid to start with. So the case very much was about and the case also talks about the Santos complaint also addresses Pozen's failure to use reasonable care in locating line ahead of Mr. Santos' work. The reality is the underlying case and this case is very much about Pozen's violations of the statute. Yes sir, and to be honest with you we hadn't been damaged. I don't think we could bring an indemnity claim. That's the best answer I have for you. I always thought the third party complaint was if my client is found to be liable, then any damages that are recoverable would come from the third party. And perhaps we could have, but I don't think that that precludes us under any kind of statute of limitations that I'm aware of from bringing the claim after the ultimate resolution. I'd be sure it would have been a lot cleaner if you called the third party complaint. And we accept responsibility for that if that's the case. When was that Santos lawsuit ultimately resolved? I want to say it was 2017. I think it was in July or August of 2017. We pled this. We went to a mediation. We settled a mediation. I think the settlement payment came 30 or 40 days after that is my recollection. But as far as comparative fault, there is no comparative fault in this statute. If you look at 106.3, it says if after receiving proper notice, a member operator fails to discharge its duty and there's damage to the line by an excavator who has complied with the act as a proximate result of the member operator's failure to discharge such duty, the excavator is not liable for such damage. So the legislature tells you in Part 3 when an excavator is not liable. And it's not liable only where it gives proper notice and it otherwise complies with the statute. Otherwise, the excavator is responsible. Henson, Your Honors, only involved subsection A. And Henson does say that one purpose of the act is damage prevention. But it says that the first purpose is accident prevention. And that makes sense because if we can avoid accidents altogether, then we're never going to be here. But that certainly means that there's a second purpose of the act. And then Henson, of course, goes on to address liability and damages under subpart A. And there are some disagreements,  cases that talk about subpart 3, which has a similar damages provision. And the Southland case does question whether or not the A&L's case the damages in A&L is too broad. There's two cases. One is Southland. One is A&L. They're both cited in the briefs. But if you read the Southland case, it does seem to call into question whether A&L's reading of those damages is too broad. Okay. You've just about run over your time, I think. Oh, no, you're still. I thought you were underwriting. We would respectfully request that either your Honors reverse the District Court's dismissal of our claim or certify a question to the Florida Supreme Court as to whether we have an indemnity right under this act. All right. Thank you both very much. We are in recess until tomorrow. Thank you.